**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | | |
|---|---|---|
| **AZAMMI, L.P.,** | § | |
| | § | |
| | § | |
| **V.** | § | **CAUSE NO. A-07-CA-251-JRN** |
| | § | |
| **THE MITCHELL GOLD CO.,** | § | |
| | § | |

**REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

TO:    THE HONORABLE JAMES R. NOWLIN
       SENIOR UNITED STATES DISTRICT JUDGE

Before the Court are Plaintiff's Amended Complaint and Petition to Compel Arbitration (Clerk's Doc. No. 4); Plaintiff's Motion to Expedite Relief (Clerk's Doc. No. 8); Defendant's Motion to Dismiss, Motion to Transfer Venue and Motion to Strike (Clerk's Doc. No.  9); Defendant's Response to Plaintiff's Motion to Expedite Relief (Clerk's Doc. No. 10); and Plaintiff's Response in Opposition to Defendant's Motion to Dismiss (Clerk's Doc. No. 13).  The motions were referred to this Court for Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72, and Rule 1(d) of Appendix C of the Local Rules of the United States District Court for the Western District of  Texas, as amended.  This Court held a hearing on  the above referenced motions on May 3, 2007.

## I. ISSUE BEFORE THE COURT

Before addressing the legal contentions of the parties, the Court that only a single issue remains for decision by the Court. Both parties have stipulated that arbitration is the appropriate resolution of this action, and that the sole remaining issue is where that arbitration should take place.

## II. FACTUAL BACKGROUND

The relevant facts are not in dispute.  Azammi and MG+BW are parties to a Dealer Agreement dated December 12, 2005, in which MG+BW granted Azammi the right to open and operate a Mitchell Gold + Bob Williams Showroom in Dallas and Austin.  Among many other provisions, the Agreement contains the following language:

> 20.    Arbitration.  In the event of any dispute arising out of this Agreement, either party may seek mediation and arbitration as follows:
>
>    (a)    By written notice to the other party, submitting the dispute to voluntary mediation, in accordance with the then-current Model Procedure for Mediation of Business Disputes of the Center for Public Resources, each party to bear equally the costs of the mediation; provided, however, that the other party may agree or refuse to participate in such mediation.  If mediation is agreed upon, the parties will appoint a mutually acceptable mediator seeking assistance in such regard from the Center for Public Resources if they have been unable to agree upon such appointment within twnety (20) days from the date of the written notice.
>
>    (b)    If the parties are not successful in resolving the dispute through self-help mediation, the dispute shall be resolved by binding arbitration. Either party may elect by written notice to the other to submit such dispute top binding arbitration in accordance with the Center for Public Resources' Rules for Non-Administered Arbitration of Business Disputes, by an impartial arbitrator selected by the Center for Public Resources.  The decision of the arbitrator shall be binding on the parties.  Judgment upon the award rendered by the arbitrator may be entered in any court having proper jurisdiction.

Exh. 2 to MG+BW's Motion to Dismiss (Clerk's Doc. No. 9) (the "Agreement").

A dispute arose under the Agreement.  Consistent with ¶ 20(a) of the Agreement, on February 16, 2007, Azammi sent notice to MG+BW that it intended to proceed with mediation in accordance with Section 20(a) of the Dealership agreement.  Exh. 1 of MG+BW's Motion to Dismiss (Clerk's Doc. No. 9).  On March 9, 2007 Azammi sent MG+BW another letter stating, among other things, "that you [MG+BW] have elected not to respond to our request for mediation by yesterday's

deadline, which is some twenty days after out initial request, so we will proceed accordingly under the Dealer Agreement." Exh. 3 of MG+BW's Motion to Dismiss (Clerk's Doc. No. 9).  On March 23, 2007, MG+BW responded to this letter by filing suit in the Superior Court of Mecklenburg County, North Carolina.  For its part, Azammi sent MG+BW a notice of arbitration on March 27, 2007. Exh. 5 of MG+BW's Motion to Dismiss (Clerk's Doc. No. 9).  Azammi also removed the North Carolina action to the United States District Court for the Western District of North Carolina. Judge Mullin of that Court has a pending Motion to Dismiss and Motion to Compel arbitration, but has requested that this Court make a ruling prior to the resolution of the case before him.

### III. ANALYSIS

As noted, the sole dispute between the parties revolves around where the arbitration required by the Agreement should take place.[1]  The answer to this question depends on whether the provisions of the Federal Arbitration Act trump the rules of the organization before which the parties' Agreement requires they arbitrate (The Center for Public Resources, or "CPR").  Azammi argues that once it was forced to file this suit to compel arbitration, the provisions of section 4 of the FAA kicked in, mandating that arbitration take place in this District.  In response, MG+BW contends that the parties agreed to arbitrate pursuant to the terms of the CPR rules, and those rules leave it up to the arbitrator to set the venue for the arbitration.

---

[1]The parties do not dispute that this Court has jurisdiction over this case under 28 U.S.C. § 1332, as the parties are of diverse citizenship and there is at least $75,000 is in controversy.  The parties also do not dispute that the Dealer Agreement is a "contract evidencing a transaction involving commerce," and is thus within the scope of the Federal Arbitration Act. *See* 9 U.S.C. § 2. Indeed, this last point is clear from the face of the Dealer Agreement, as it grants Azammi the right to open a home furnishings store in Austin and Dallas of the MG+BW brand, and contemplates Azammi ordering and purchasing inventory from MG+BW to be shipped in interstate commerce.

MG+BW argues that the North Carolina Uniform Arbitration Act, not the Federal Arbitration Act, applies to this case.  It bases this argument on the choice of law provision of the Agreement, which provides that the the "Agreement will be governed by and construed in accordance with the laws of the State of North Carolina."  Agreement at ¶ 12.  Presumably, the reason MG+BW makes this argument is that the North Carolina Act does not contain a provision like § 4 of the FAA, which mandates that a court-ordered arbitration "shall be within the district in which the petition for an order directing such arbitration is filed."  9 U.S.C. § 4.  In support of its argument that the North Carolina Act applies, MG+BW relies on *Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468 (1989).  *Volt*, however, is not controlling on this issue. In *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52 (1995), the Supreme Court distinguished *Volt*, *id.* at 60 n.4, and made it clear that the existence of a state choice of law provision in an agreement did not preclude the applicability of the FAA to enforce an agreement to arbitrate. *Id.* at 58.  The Fifth Circuit has reached the same conclusion.  *Action Industries, Inc. v. Fidelity & Guaranty Co.*, 358 F.3d 337, 343 (5th Cir. 2004).  As noted, the Dealer Agreement only mentions North Carolina law as the choice of substantive law for the agreement; it makes no reference to the North Carolina Uniform Arbitration Act.  Thus, under *Mastrobuono* and *Action*, the choice of law provision does not preclude application of the FAA to enforce the arbitration agreement.

Section 4 of the Federal Arbitration Act states in relevant part:

A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner

provided for in such agreement. . . .  The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement. The hearing and proceedings, under such agreement, shall be within the district in which the petition for an order directing such arbitration is filed.

9 U.S.C. § 4.  Notwithstanding its protestations to the contrary, MG+BW clearly refused to arbitrate under the Agreement.  Azammi followed the requirements of ¶ 20 of the Agreement to the letter, first making a request for mediation, and following that up with notice that because MG+BW had refused to mediate, Azammi would "proceed accordingly under the Dealer Agreement."  MG+BW's argument that Azammi's statement that it would "proceed accordingly" was vague and entitled it to assume that a suit was to be filed against it is wholly unpersuasive.  Up to that point Azammi had fully complied with the requirements of ¶ 20, and its statement that it would "proceed accordingly" under the Agreement gave MG+BW no reasonable cause for concern.  Moreover, had MG+BW truly feared that Azammi was threatening to file suit instead of proceed to arbitration (a contention the Court finds completely implausible), the appropriate response was to request Azammi to clarify its intentions, or, at most, to file a suit to compel arbitration.  Instead, MG+BW rushed to the state courthouse in its backyard and filed a suit for breach of contract and equitable relief.  Exh. B to Complaint (Clerk's Doc. No. 1).  The filing of that suit was completely inconsistent with the parties' Agreement, and was not warranted by Azammi's statement that it intended to proceed under the Agreement.  Thus, MG+BW's action in filing the Mecklenburg County suit after receiving notice of mediation from Azammi was a "refusal" to arbitrate as that term is used in Section 4 of the FAA.  Thus, unless there is some exception to the provisions of § 4 of the FAA, arbitration is required to

take place "within the district in which the petition for an order directing such arbitration is filed," which would be the Western District of Texas.

MG+BW urges that just such an exception exists, as described by the Fifth Circuit in *Dupuy-Busching General Agency, Inc. v. Ambassador Ins. Co.,* 524 F.2d 1275, 1277-78 (5th Cir. 1975). In *Dupuy* the litigants were parties to an insurance commission agreement, which contained an arbitration provision requiring arbitration in New Jersey. When a dispute arose, Ambassador made a demand for arbitration in New Jersey. Dupuy responded by filing suit in Mississippi, seeking to stay the arbitration, and to revoke the agreement to arbitrate. Ambassador counterclaimed, and sought to require arbitration under § 4 of the FAA, but moved to have the arbitration in New Jersey, as required by the agreement, and not in Mississippi, as required by § 4. The Fifth Circuit agreed, and ordered that the arbitration proceed as agreed in New Jersey. 524 F.2d at 1277-78.

There are many obvious dissimilarities between *Dupuy* and this case. First, the arbitration provision in the *Dupuy* case contained a mandatory New Jersey venue provision. Here, the Agreement says nothing about the venue for arbitration. Rather, the parties have agreed to arbitrate pursuant to the CPR rules, which themselves are silent regarding venue, except to state that an arbitrator may set venue when that issue is disputed. It a far cry to say that *Dupuy*, which gave the parties' explicit agreement precedence over the FAA rule, would similarly call for giving a private arbitration association's rules precedence over a federal statute. Further, there were clear equitable reasons for the result in *Dupuy*, which the Circuit acknowledged. Specifically, the court noted that it was *Dupuy* which filed the suit in Mississippi, and *Dupuy* that was seeking to avoid arbitration, which forced Ambassador to respond in the Mississippi suit with a counterclaim under § 4. *Id.* at 1277. Thus, in *Dupuy*, it was the party with equity on its side that was asking that the court not

enforce the requirements of the statute, so that the parties' agreement could be carried out. Here, it is the opposite. MG+BW, having abrogated the arbitration provision by filing the state court suit, does not have clean hands. Equitably, it is in no position to complain about the Court applying the plain terms of the FAA. MG+BW made itself vulnerable to the FAA procedures by its own acts. Had MG+BW not filed suit in Mecklenburg County, but had instead proceeded with a CPR arbitration, the CPR tribunal would have chosen the appropriate venue in accordance with its procedures and this Court would not be forced to apply the mandatory venue provision of the FAA. "It would stand reason on its head to allow [MG+BW] to dictate the choice of forum for arbitration by seeking to avoid arbitration" with the Mecklenburg County suit. *Municipal Energy Agency of Mississippi v. Big Rivers Electric Corp.*, 804 F.2d 338 (5th Cir. 1986), *see also Snap-on Tools Corp v. Mason*, 18 F.3d 1261, 1266 (5th Cir. 1994).

Accordingly, because Azammi's Petition to Compel Arbitration is proper and because the FAA specifically instructs the Court to order arbitration within the district in which the petition for an order directing such arbitration is filed, the Court makes the following recommendations:

## IV. RECOMMENDATION

The undersigned RECOMMENDS that the District Court **GRANT** Plaintiff's Petition to Compel Arbitration (Clerk's Doc. No. 4) and Plaintiff's Motion to Expedite Relief (Clerk's Doc. No. 8) and **DENY** Defendant's Motion to Dismiss, Motion to Transfer Venue and Motion to Strike (Clerk's Doc. No. 9), and **ORDER** the parties to arbitrate their dispute in the Western District of Texas and in accordance with the CPR Rules and ¶ 20 of the Dealer Agreement.

## V. WARNINGS

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. See *Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within ten (10) days after the party is served with a copy of the Report shall bar that party from de novo review by the District Court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. See 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 150-53, 106 S. Ct. 466, 472-74 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

To the extent that a party has not been served by the Clerk with this Report & Recommendation electronically pursuant to the CM/ECF procedures of this District, the Clerk is directed to mail such party a copy of this Report and Recommendation to the parties by certified mail, return receipt requested.

SIGNED this 25th day of May, 2007.

_____

ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE